UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL NAHASS,<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>)  C.A. No. 15-12354-MLW |
| JAMES HARRISON, GREGORY<br>QUARLES, MITCHELL COGERT, AND<br>LAWRENCE SIEGEL,<br>    Defendants. | )<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 13, 2016

I.   SUMMARY

In this removed case, plaintiff Paul Nahass, a shareholder and former director and officer of FlexLite Corporation ("FlexLite"), has sued defendants James Harrison, Gregory Quarles, Mitchell Cogert, and Lawrence Siegel, a group of other FlexLite shareholders, for terminating Nahass as an officer and director of FlexLite. Nahass alleges that his termination violated FlexLite's corporate bylaws (the "Bylaws") and defendants' fiduciary duties to Nahass as a minority shareholder in a close corporation. Defendants have moved to dismiss. They argue that: (1) Delaware law applies to the breach of fiduciary duty claim and, under Delaware law, shareholders in a close corporation do not have a fiduciary duty to each other; and (2) Nahass was removed properly by the holders of a majority of FlexLite's shares.

The Motion to Dismiss is being allowed.  Under Massachusetts choice-of-law rules, Delaware law applies to Nahass's breach of fiduciary duty claim.  Nahass has not alleged sufficient facts to prove that defendants owed him a fiduciary duty under Delaware law.  More specifically, he has not alleged that any of the defendants was individually a controlling shareholder or that the defendants formed a control group.  Nahass also has not alleged sufficient facts to state a plausible claim that defendants breached the ByLaws.  In particular, Nahass has alleged only that no shareholder vote was conducted on his removal as a director. He has not alleged that the defendants did not remove him by written consent, which the ByLaws would permit.

II.  PROCEDURAL HISTORY

Nahass filed this case in the Superior Court for Middlesex County of the Commonwealth of Massachusetts.  He asserts two counts against all defendants.  Count I alleges that the defendants breached their fiduciary duty of "utmost good faith and loyalty" as shareholders in a close corporation by terminating Nahass in order to: (1) prevent him from continuing to receive money as a shareholder and employee of FlexLite; (2) pressure him into selling his unvested shares for less than their value; and (3) attempting to "freez[e] Nahass out of FlexLite."  See id. ¶¶39-49.  Count II alleges breach of contract, asserting that defendants violated

FlexLite's Bylaws by removing Nahass as an officer and director without holding a shareholder vote. See id. ¶¶51-56.

Defendants removed the case to this court. Defendants then filed a Motion to Dismiss and memorandum in support ("MTD Mem."). Defendants also filed the Affidavit of Frank N. Gaeta, attaching, among other things, the FlexLite Certificate of Incorporation, the Founder Stocker Purchase Agreement, and the ByLaws. On August 11, 2015, Nahass filed an opposition (the "Opposition").

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); see also Penalbert-Roia v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "The plaintiff's factual allegations are ordinarily assumed to be true in passing on the adequacy of the complaint, which need not plead evidence." Penalbert-Roia, 631 F.3d at 595. "But 'ordinarily' does not mean 'always': some allegations, while not stating ultimate legal conclusions, are nevertheless so

threadbare or speculative that they fail to cross 'the line between
the conclusory and the factual.'" Id. (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 557 n. 5 (2007))..

A motion to dismiss should be denied if a plaintiff has shown
"a plausible entitlement to relief." Twombly, 550 U.S. at 559.
That is, the complaint "must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face. A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550
U.S. at 570). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Id. (quoting
Twombly, 550 U.S. 556). "Where a complaint pleads facts that are
merely consistent with a defendant's liability, it stops short of
the line between possibility and plausibility of entitlement to
relief." Id. (quoting Twombly, 550 U.S. at 557). "The relevant
inquiry focuses on the reasonableness of the inferences of
liability that the plaintiff is asking the court to draw from the
facts alleged in the complaint." Ocasio-Hernandez, 640 F.3d at
13.

"Under Rule 12(b)(6), the district court may properly
consider only facts and documents that are part of or incorporated

4

into the complaint." <u>Rivera v. Centro Medico de Turabo, Inc.</u>, 575
F.3d 10, 15 (1st Cir. 2009); <u>Rodi v. Southern New England School
of Law</u>, 389 F.3d 5, 15 (1st Cir. 2004) (considering letters
attached to the complaint in evaluating a motion to dismiss).
However, there are "narrow exceptions for documents the
authenticity of which are not disputed by the parties; for official
public records; for documents central to plaintiff['s] claim; or
for documents sufficiently referred to in the complaint."
<u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993). When "a
complaint's factual allegations are expressly linked to—and
admittedly dependent upon—a document (the authenticity of which is
not challenged), that document effectively merges into the
pleadings and the trial court can review it in deciding a motion
to dismiss under Rule 12(b)(6)." <u>Beddall v. State Street Bank and
Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998). When such documents
contradict an allegation in the complaint, the document trumps the
allegation. <u>See</u> <u>Clorox Co. P.R. v. Proctor & Gamble Consumer Co.</u>,
228 F.3d 24, 32 (1st Cir. 2000).

IV.  FACTS

Unless otherwise indicated, the following facts are alleged
in the Complaint. On December 20, 2013, Nahass, Harrison, Cogert,
and Siegel incorporated FlexLite, a Delaware corporation with a
principal place of business in Massachusetts. The company focuses
on developing wearable light therapy devices to enable athletes to

recover from exertion. Nahass was a member of the board of directors, as well as the Secretary and Chief Product Officer.

On June 20, 2014, Nahass executed the Founder Stock Purchase Agreement pursuant to which he paid more than $31,000 for up to 768,000 shares of FlexLite stock. At the same time, Nahass also executed a non-compete agreement.

From October 2013 to October 2014, Nahass and the other directors worked without compensation. In October 2014, Nahass and the other directors began receiving a $6,000 per month salary. Nahass received $12,000 in salary before being terminated from FlexLite. Prior to his termination, Nahass contributed his time and resources to FlexLite including by "provid[ing] numerous significant, high-value contacts" such as the "chief athletic consultant, the industrial designer of the product, and several key investors and advisors." Compl. ¶¶27-28. Nahass estimates that the fair market value of the services he provided to FlexLite is approximately $225,000.

On December 11, 2014, Quarles informed Nahass that he had been terminated as an employee and director of FlexLite. On December 19, 2014, Nahass received a letter from Quarles confirming that he had been terminated without cause as of December 11, 2014. The letter also indicated that FlexLite would provide Nahass with the 464,000 FlexLite shares that had fully vested as of his termination date, and that FlexLite was invoking its option to buy

back Nahass's remaining 304,000 unvested shares at the $0.04 per share purchase price set by the Stock Purchase Agreement. Nahass asserts that the letter incorrectly calculated his vested shares, which actually total 480,000. FlexLite had previously declined to exercise its option to repurchase unvested shares from two other minority shareholders who did not maintain employment with the company.

FlexLite's Bylaws provide that "directors of the corporation may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors." Bylaws §2.7. Defendants are holders of a majority of shares of FlexLite. See Compl. ¶¶2-5 (describing defendants as "majority shareholder[s]").

V.   DISCUSSION

A.   Breach of Fiduciary Duty

Count I of the Complaint asserts that FlexLite is a "close corporation," that "[s]hareholders of a close corporation owe one another a strict fiduciary duty of the utmost good faith and loyalty." Compl. ¶¶39, 40. Nahass alleges that defendants breached their fiduciary duty to Nahass by "terminating Nahass's employment, removing Nahass as an Officer and Director of [FlexLite], and by otherwise freezing Nahass out of FlexLite." Compl. ¶47. This claim relies in part on Nahass's argument that Massachusetts law applies to his breach of fiduciary duty claim.

Defendants contend that Delaware law, not Massachusetts law, governs the breach of fiduciary duty claim, and that Delaware law does not recognize a fiduciary duty of utmost good faith and fair dealing in a close corporation.[1]

In a case brought in federal court based on diversity jurisdiction under 28 U.S.C. §1332, the choice-of-law rules of the forum state determine the applicable law. See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). Massachusetts law provides that shareholders in a close corporation owe one another a duty of "utmost good faith and fair dealing." Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 848-49 (Mass. 1976). However, the Massachusetts Supreme Judicial Court made clear in Harrison v. NetCentric Corp., 433 Mass. 465, 470-72 (2001) that, pursuant to the Massachusetts "internal affairs" doctrine, the law of the state of incorporation applies to disputes over the internal workings of a corporation, including allegations that majority shareholders breached a fiduciary duty to shareholders. FlexLite is a Delaware corporation. Therefore, Delaware law, not Massachusetts law, applies to the breach of fiduciary duty claim.

Nahass argues that the choice-of-law analysis requires the court to make factual findings that are inappropriate at the motion

---

[1] See Corporation, Black's Law Dictionary (10th ed. 2014) (defining "close corporation" as "[a] corporation whose stock is not freely traded and is held by only a few shareholders.").

to dismiss stage. See Opposition at 3. He relies on the decision in Resolution Trust Corp. v. Gladstone, 895 F. Supp. 356 (D. Mass. 1995) for the proposition that the "internal affairs" doctrine creates a presumption about the applicable law that can be overcome "(1) if the expectations of the parties involved merit the application of the other law; (2) in the name of certainty; or (3) if the ease in the determination and application of the law to be applied justify the use of another jurisdiction's law." Opposition at 3 (quoting Resolution Trust, 895 F. Supp. at 363). Resolution Trust is inapplicable here. In that case, the court addressed whether federal or state common law applied to a federally chartered trust company, concluding that it would "follow the courts that conclude that federal common law is appropriately applied to federally chartered institutions." See Resolution Trust, 895 F. Supp. at 363. In Resolution Trust, the court relied on precedent from the Fourth Circuit Court of Appeals concerning the federal internal affairs doctrine, without mentioning Massachusetts choice-of-law rules. See id. Here, there is no analogous question of whether federal or state common law applied. In any event, the Massachusetts internal affairs doctrine applies as explained in Harrison, 443 Mass. at 470-72.

In contrast to Massachusetts law, under Delaware law shareholders in a close corporation do not have a fiduciary duty to each other. Nixon v. Blackwell, 626 A.2d 1366, 1380-81 (Del.

1993) ("It would run counter to the spirit of the doctrine of independent legal significance, and would be inappropriate judicial legislation for this Court to fashion a special judicially-created rule for minority investors when the entity does not fall within those statutes, or when there are no negotiated special provisions in the certificate of incorporation, by-laws, or stockholder agreements."); compare Wilkes, 370 Mass. at 848-49 ("[T]he standard of duty owed by [stockholders in a close corporation] to one another is one of utmost good faith and loyalty"). . Indeed, Delaware courts have expressly rejected the Massachusetts Supreme Judicial Court's reasoning in Wilkes. See Riblet Products Corp. v. Nagy, 683 A.2d 37, 39 (Del. 1996) ("Wilkes has not been adopted as Delaware law."); Blaustein v. Lord Baltimore Capital Corp., 2013 WL 1810956, at *14 & n.83 (Del. Ch. Apr. 30, 2013) aff'd, 84 A.3d 954 (Del. 2014).

Instead, Delaware law provides a statutory mechanism for incorporating an entity as "close corporation," which imposes certain additional restrictions that do not apply to other corporations. See Nixon, 626 A.2d at 1380. Nahass does not allege that FlexLite was incorporated as a statutory "close corporation." Therefore, the additional restrictions do not apply. Accordingly, defendants do not owe a fiduciary duty of "utmost good faith and loyalty" to Nahass as alleged in the Complaint.

Some Delaware courts have held that "majority stockholders have fiduciary duties to minority stockholders [as] stockholders . . ." in certain circumstances. Riblet, 683 A.2d 37. Delaware law provides that: "a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation. . . . [A] shareholder who owns less than 50% of a corporation's outstanding stocks does not, without more, become a controlling shareholder of that corporation, with a concomitant fiduciary status." Kahn v. Lynch Commc'n Sys., Inc., 638 A.2d 1110, 1113-14 (Del. 1994) (quoting Ivanhoe Partners v. Newmont Mining Corp., 535 A.2d 1334, 1344 (Del. 1987); Citron v. Fairchild Camera & Instrument Corp., 569 A.2d 53, 70 (Del. 1989)) (quotations omitted) (emphasis in original)).

> "Generally, a shareholder owes a fiduciary duty only if it a) owns a majority interest in or b) exercises control over the business affairs of the corporation. Upon a determination that a shareholder has fiduciary duties and has engaged in a self-dealing transaction, the standard of "intrinsic fairness" (or "entire fairness," as addressed in Weinberger v. UOP) applies, having the effect of shifting the burden of proof to defendants."

Gradient OC Master, Ltd. v. NBC Universal, Inc., 930 A.2d 104, 130 (Del. Ch. 2007) (citing Ivanhoe Partners, 535 A.2d at 1344). In addition:

> in appropriate circumstances, multiple stockholders together can constitute a control group, with each of its members being subject to the fiduciary duties of a controller. The alleged members of a control group, however, must be "connected in some legally significant way"—such as "by contract, common ownership, agreement,

11

or other arrangement—to work together toward a shared goal." The law does not require a formal written agreement, but there must be some indication of an actual agreement. Plaintiffs must allege more than mere concurrence of self-interest among certain stockholders to state a claim based on the existence of a control group.

In re Crimson Expl. Inc.Stockholder Litig., 2014 WL 5449419, at *15 (Del. Ch. Oct. 24, 2014) (quoting Dubroff v. Wren Hldgs., LLC, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009)).

Nahass has not alleged that any one of the defendants holds the majority stake or exercises control over the affairs of the corporation. Contrast Kahn, 638 A.2d 1110; In re MAXXAM, Inc., 659 A.2d 760 (Del. Ch. 1995). Instead, he describes each of the four defendants as a majority shareholder. See Compl. ¶¶2-5, 41-42. This characterization cannot be accurate; it is impossible and, therefore, implausible. Also, Nahass has also not alleged sufficient facts to prove that the defendants constituted a control group. At most, he has alleged that defendants agreed that Nahass should be terminated as an officer and director of FlexLite. Without more, the defendants cannot be deemed a control group with fiduciary duties to Nahass.

Finally, Nahass argues in the alternative that the "entire fairness" standard should apply. See Opposition at 10-11. Delaware law reviews a decision by the board of directors for the "entire fairness" of the transaction when "a board of directors' loyalty is questioned." Cinerama, Inc. v. Technicolor, Inc., 663

A.2d 1156, 1170 (Del. 1995); see also Weinberger v. UOP, Inc., 457
A.2d 701, 710 (Del. 1983). It is generally applied "[w]hen
directors of a Delaware corporation are on both sides of a
transaction . . ." Weinberger, 457 A.2d at 710. It also applies
where "[a] controlling or dominating shareholder stand[s] on both
sides of a transaction . . ." Kahn, 638 A.2d at 1115 (Del. 1994).
It is commonly involved in cases challenging a corporate merger.
See, e.g., id.; Cinerama, 663 A.2d 1156; Cede & Co. v. Technicolor,
Inc., 542 A.2d 1182 (Del. 1988); Rosenblatt v. Getty Oil Co., 493
A.2d 929 (Del. 1985); Weinberger, 457 A.2d 701. However, the
Complaint does not mention the "entire fairness" standard. Nahass
cites only Massachusetts law, and not Delaware law, concerning the
"entire fairness" standard in his Opposition. Nahass also does
not address how the doctrine would apply to employment decisions
or decisions of non-controlling shareholders. Therefore, Nahass
has not alleged sufficient facts to state a plausible claim that,
under Delaware law, the "entire fairness" standard applies and was
violated.

   B.   Breach of Contract

   Nahass also alleges that the FlexLite Bylaws are a "bargained-
for agreement between FlexLite's shareholders and directors" and
that the defendants violated the Bylaws by removing him as a
director without conducting a vote of the shareholders. See Compl.
¶¶51-56. Defendants argue that the Bylaws permit a FlexLite

13

director to be removed without a vote of the shareholders as long as the decision to remove the director was made by the holders of a majority of shares. See MTD Mem. at 17.

"Corporate charters and bylaws are contracts among a corporation's shareholders; therefore, [Delaware] rules of contract interpretation apply." Airgas, Inc. v. Air Products & Chemicals, Inc., 8 A.3d 1182, 1188 (Del. 2010). The parties to the ByLaws which are the contract in this case include directors, officers, and shareholders. See Boilermakers Local 154 Ret. Fund v. Chevron Corp., 73 A.3d 934, 939-40 (Del. Ch. 2013) (citing Airgas, 8 A.3d at 1188; Lawson v. Household Finance Corp., 152 A. 723, 726 (Del. 1930)) ("[T]he bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers, and stockholders formed within the statutory framework of the [Delaware General Corporation Law]."). If a bylaw is unambiguous, courts "do not proceed to interpret it or to search for the parties' intent behind the bylaw. [They] only construe the bylaw as it is written, and [] give language which is clear, simple, and unambiguous the force and effect required." Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 342-43 (Del. 1983). However, "[i]n the interpretation of charter and by-law provisions, '[c]ourts must give effect to the intent of the parties as revealed by the language of the certificate and the circumstances surrounding its creation and adoption.' Therefore,

14

the intent of the stockholders in enacting particular charter or by-law amendments is instructive in determining whether any ambiguity exists." Centaur Partners, IV v. Nat'l Intergroup, Inc., 582 A.2d 923, 928 (Del. 1990) (citations omitted).

In general, directors do not have vested interest in their office because "any right which they may have held in the office of director was acquired with the actual or implied knowledge that such right could be extinguished by the vote or consent of the majority stockholders of the defendant corporation." Stellini v. Oratorio, 1979 Del. Ch. LEXIS 472, at *4 (Del. Ch. Sep. 5, 1979) (citing Everett v. Transnation Development Corporation, 267 A.2d 627 (Del. Ch. 1970)). Shareholders may remove directors with or without cause, unless otherwise provided by the certificate of incorporation. See 8 Del. Code §141(k) ("Any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors . . .").

However, there are a limited number of ways in which shareholders may act. Shareholders may act at an annual meeting. See 8 Del. Code §211(b). In addition, "[s]tockholders can act in between annual meetings to remove directors, to fill vacancies, or to fill newly created directorships." Crown EMAK Partners, LLC v. Kurz, 992 A.2d 377, 401 (Del. 2010) (citing 1 David A. Drexler et al., Delaware Corporate Law and Practice §13.02 at 13-27 to 13-28

(2009)).  Shareholder actions between annual meetings must be
performed by written consent.  See 8 Del. Code §228; Stellini,
1979 Del. Ch. LEXIS 472, at *6; Everett, 267 A.2d at 629.  Section
228(a) states that:

> Unless otherwise provided in the certificate of
> incorporation, any action required by this chapter to be
> taken at any annual or special meeting of stockholders
> of a corporation, . . . may be taken without a meeting,
> without prior notice and without a vote, if a consent or
> consents in writing, setting forth the action so taken,
> shall be signed by the holders of outstanding stock
> having not less than the minimum number of votes that
> would be necessary to authorize or take such action . . .
> and shall be delivered to the corporation by delivery to
> its registered office in this State, its principal place
> of business or an officer or agent of the corporation
> having custody of the book in which proceedings of
> meetings of stockholders are recorded. Delivery made to
> a corporation's registered office shall be by hand or by
> certified or registered mail, return receipt requested.

The Bylaws include a removal provision that mirrors the
statutory provision, stating that "[e]xcept as otherwise provided
by the General Corporation Law of the State of Delaware, any one
or more or all of the directors of the corporation may be removed,
with or without cause, by the holders of a majority of the shares
then entitled to vote at an election of directors . . ."  Bylaws
§2.7[2]; 8 Del. Code §141(k).  Consistent with Delaware law, the
Bylaws also refer to two methods by which shareholders can act:

---

[2] It is appropriate for the court to consider the ByLaws on the
Motion to Dismiss because they are "central to plaintiff['s] claim;
or [] documents sufficiently referred to in the complaint."
Waterson, 987 F.2d at 3-4.

shareholder meeting (annual or special) and written consent.  <u>See</u>
Bylaws §§1.2-1.3, 1.9, 1.11.

Nahass has not sufficiently pled that defendants breached a
duty established by the ByLaws.  "Under Delaware law, the elements
of a breach of contract claim are: (1) a contractual obligation;
(2) a breach of that obligation by the defendant; and (3) resulting
damage to the plaintiffs."  <u>Greenstar, LLC v. Heller</u>, 814 F. Supp.
2d 444, 450 (D. Del. 2011)(citing <u>WaveDivision Holdings, LLC v.</u>
<u>Millennium Digital Media Systems, L.L.C.</u>, Civ. No. 2993-VCS, 2010
WL 3706624, *13 (Del. Ch. 2010)).  Nahass alleges that: (1)
defendants had a duty under the ByLaws to remove him only by
holding a shareholder vote; and (2) defendants breached this duty
by removing Nahass "without putting the matter to a shareholder
vote."  Compl. ¶¶53-54.  However, Nahass's allegations about
defendants' duties are contradicted by the ByLaws.  The ByLaws
permit shareholders to remove directors  by either a shareholder
vote or by written consent of the holders of a majority of shares,
without a vote at a shareholder meeting.  <u>See</u> ByLaws §§2.7
(concerning removal of directors); 1.11(a) (concerning actions by
written consent).  The terms of ByLaws trump inconsistent
allegations in the Complaint.  <u>See</u> <u>Clorox</u>, 228 F.3d at 32.
Therefore, to plead a breach of the ByLaws, Nahass must allege
that defendants neither held a shareholder vote nor acted by
written consent.  Accordingly, the breach of contract count is

being dismissed without prejudice to Nahass amending the claim to include an allegation that the defendants did not act by written consent if there is a proper basis for doing so.

VI.  ORDER

In view of the foregoing, it is hereby ORDERED that Defendants' Motion to Dismiss (Docket No. 6) is ALLOWED.

1.  Count 1 is DISMISSED with prejudice.

2.  Count 2 is DISMISSED without prejudice.


UNITED STATES DISTRICT JUDGE

18